**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUGARTOWN WORLDWIDE LLC** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | |
| | : | **NO.  14-5063** |
| | : | |
| **KENNETH LINN SHANKS and** | : | |
| **JAMES MICHAEL GLOVER** | : | |

**<u>MEMORANDUM</u>**

**KEARNEY, J.**                                                    **MARCH 24, 2015**

Holding a $5,970,390.75 default judgment against non-party and judgment-proof Outlook International Limited ("Outlook") on an unpaid guaranty, judgment creditor Sugartown Worldwide LLC ("Sugartown") now seeks to hold Outlook's two individual principals liable for the default judgment.  Sugartown seeks to pierce Outlook's corporate veil, collect damages and impose a receiver and a constructive trust arising from Defendants' alleged fraud, unjust enrichment, transfers violating the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA") and breach of fiduciary duty. Nobody disputes Outlook's guaranty liability.  Facing a creative creditor's complaint after execution discovery, we now consider the extent this Court should allow Sugartown to set aside Outlook's corporate form or pursue Outlook's two owners through separate tort theories to collect on an unpaid judgment.

In his motion to dismiss, Outlook principal and defendant James Michael Glover ("Glover") argues that this Court lacks personal jurisdiction over him as he has been living in China on a resident visa at all material times and has never travelled to, or done business in,

Pennsylvania. He also argues that Sugartown cannot use tort theories to transfer liability for Outlook's judgment to him as a matter of law.[1]

We find that this Court lacks personal jurisdiction over Glover on the fraud in the inducement/common law conspiracy claim (Count II) and unjust enrichment claim (Count III). On a motion to dismiss standard, Sugartown may proceed into discovery against both Defendants under theories of fraudulent transfer (Count IV) and breach of fiduciary duty (Count V).   In the accompanying Order, we grant Glover's motion to dismiss the "piercing the corporate veil" claim (Count I) without prejudice as it is not a cause of action and has not been sufficiently plead and dismiss any claim for a constructive trust or a receiver for assets under Count IV now held by non-party Outlook Sge or other non-party alleged transferees of some of Outlook's assets.

## I.      FACTS PLAUSIBLY ALLEGED REGARDING THE JUDGMENT.

Sugartown owns Lilly Pulitzer trademarks, service marks and other intellectual property rights.  (ECF Doc. No. 1, Compl., ¶ 7.)  In **January 2010**, Sugartown and HFI Brand, Inc. ("HFI") entered into a license agreement (the "Agreement") allowing HFI to use the trademarks on certain furniture and related products.  (*Id.* ¶¶ 8, 10.)  In exchange, HFI agreed to make royalty payments to Sugartown.  (*Id.* ¶ 10.)  Sugartown asked HFI to secure a guaranty for the royalties.  (*Id.* ¶¶ 8, 10.)  Outlook agreed to guaranty (the "Guaranty") the royalty payments.  (*Id.* ¶ 8.)

Defendant Shanks admitted that by **early 2011**, he knew that HFI would probably default and Outlook would be liable on the Guaranty. (*Id.* ¶ 29*).*  Thereafter, Shanks admits that Outlook paid approximately $5.5 million to its subsidiaries and other companies owned and controlled by

---

[1] Co-defendant Kenneth Linn Shanks ("Shanks") is a Maryland citizen that allegedly co-owns Outlook and had direct contact with Sugartown.   Shanks elected to timely answer the Complaint. (ECF Doc. No 7)

Glover and him as "marketing" and "consultancy" fees. (*Id.* ¶ 30)   At some unknown point in 2011, Outlook paid $500,000 to Shanks and Glover as "director's fees". (*Id.* ¶ 34)

Glover and Shanks formed non-party Outlook Sge in **March 2012** based in Singapore. (*Id.* ¶ 35.)  Shanks and Glover own Outlook Sge and are its only board members.  (*Id.*)  Outlook Sge delivers many of the same services as Outlook.  (*Id.* ¶ 36.)   In **July 2012**, Outlook sold "most of its assets, including Outlook's various office assets and Outlook's subsidiary companies, to Outlook Sge." (*Id.* ¶ 37.)  Sugartown alleges Shanks and Glover sold these assets to Outlook Sge for inadequate consideration or no consideration at all to avoid an impending payment to Sugartown.  (*Id.* ¶ 39.)

By **October 2012**, HFI breached the Agreement by failing to pay over $5,850,000 in royalties.  (*Id.*)  On November 30, 2012, Sugartown sued HFI and Outlook in this Court.  HFI and Outlook failed to answer. On **March 19, 2013**, the Honorable John R. Padova entered default judgment against Outlook for $5,970,390.75.  (*Id.* ¶ 25; Ex. B.).   After discovery in aid of execution, Sugartown filed this action.

## II.   ANALYSIS

### A.    Does this Court have personal jurisdiction over Glover on each claim?

When a defendant raises the defense of personal jurisdiction, the plaintiff bears the burden of a *prima facie* showing of appropriate jurisdiction. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).  Plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, National Association v. Farino*, 960 F.2d 1217, 1221 (3d Cir.1992) (citation omitted).  A "plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Miller Yacht Sales*, 384 F.3d at 97

(citing *Pinker*, 292 F.3d at 368).  Plaintiff, however, must support its allegations with affidavits or other competent evidence and may not simply rely on its pleadings.  *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).   The determination of whether a court may exercise specific personal jurisdiction over a defendant is claim-specific. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir.2001).

As an affiant showing lack of contacts with Pennsylvania, Glover swears:

- he has lived full-time in Asia since 1989 (ECF Doc. No. 11-1, Def.'s Aff., ¶ 2.);

- since 1998, he has lived in China with a resident visa  (*Id.* ¶ 3.);

- he has never traveled to Pennsylvania for business or personal reasons, does not own property within Pennsylvania and does not maintain any bank accounts in Pennsylvania  (*Id.* ¶¶ 6-8.);

- he is the Director of Asian Operations for Outlook International, a Hong Kong Company incorporated in 1998 (*Id.* ¶¶ 9, 12.);

- as Director of Asian Operations, Glover manages the staffing and manufacturing aspects of the business (*Id.* ¶ 12.);

-  non-party Steve McKee ("McKee") is the President, CEO, and one third owner of HFI  (*Id.* ¶ 14.);

- McKee was solely responsible for negotiating the Agreement between HFI and Sugartown, which included the Guaranty (*Id.* ¶ 14.);

- Glover was not personally involved with the negotiation or execution of the Agreement or Guaranty (*Id.* ¶ 15.);

- he never signed any agreements, contracts, or licenses with Sugartown or authorized anyone to sign on his behalf  (*Id.* ¶ 16.);

- he has not communicated with anyone at Sugartown regarding the Agreement or Guaranty (*Id.* ¶ 18.); and,

- Shanks is not his personal agent and does not have authority to take action on his behalf.  (*Id.* ¶ 19.)

Sugartown responded with citations to Outlook's corporate and financial records facially demonstrating Glover's involvement in the transactions forming the basis of the fraudulent transfer claims, but no specific contacts with Sugartown or Pennsylvania.

A federal court may exercise personal jurisdiction "according to the law of the state where it sits."  *O'Connor v. Sandy Lane Hotel, Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007).  "First, the court must apply the relevant long-arm statute to see if it permits the exercise of personal jurisdiction; then the court must apply the precepts of the Due Process Clause of the Constitution."  *IMO Indus., Inc v. Kiekart AG*, 155 F.3d 254, 259 (3d Cir. 1998).  Pennsylvania's long arm statute provides that it reaches to the "fullest extent allowed under the Constitution of the United States."  42 Pa. Cons. Stat. § 5322(b).  "A district court's exercise of personal jurisdiction pursuant to Pennsylvania's long arm statute is therefore valid as long as it is constitutional."  *Pennzoil Prods Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197 (3d Cir. 1998) (citing Farino, 960 F.2d at 1221).

Personal jurisdiction is shown through either specific or general jurisdiction.[2]  *See Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414-16 (1984).  Specific jurisdiction exists when "the basis of 'plaintiff's claim is related to or arises out of the defendant's contacts.'"  *Bragg v. Linden Research, Inc.*, 487 F. Supp. 2d 593, 597 (E.D. Pa.

---

[2] Sugartown concedes that this Court does not have general jurisdiction over Defendant Glover. We only analyze whether we can exercise specific jurisdiction over Glover.

2007) (citing *Pennzoil*, 149 F.3d at 201).   Under the traditional analysis, a court engages in a two-prong review to find specific jurisdiction.  *See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996).  "First, the defendant must have made constitutionally sufficient 'minimum contacts' with the forum . . . Second, if 'minimum contacts are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice."  *Id.* (citations omitted).  Minimum contacts exist where the defendant has "purposefully directed his activities toward residents of the forum" and the litigation results from "alleged injuries that arise out of or relate to those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1984) (internal quotations omitted).

Sugartown does not argue the traditional specific jurisdiction analysis where the court evaluates whether a defendant has sufficient "minimum contacts" with the forum.[3]  Sugartown instead claims that Glover is subject to specific jurisdiction under alternative theories.  First, Sugartown urges the Court to impute Shanks' conduct to Glover under the co-conspirator theory of specific personal jurisdiction.  *See Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 846 F. Supp. 374, 379 (E.D. Pa. 1994).  Second, Sugartown alleges that Glover is subject to specific jurisdiction under the "effects test" announced in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed. 2d 804 (1984).[4]

---

[3] We will evaluate the unjust enrichment claim under the traditional analysis as it is not part of the conspiracy claim subject to "co-conspirator jurisdiction" nor is it an intentional tort subject to the "effects test."

[4] We reject Sugartown's third jurisdictional argument that we should essentially infer a partnership between Shanks and Glover.  The *Miller Yacht Sales* case Sugartown relies on is inapposite.  In that case, the Court of Appeals inferred a partnership between two non-resident persons working for two separate companies.  *Miller Yacht Sales*, 384 F.3d at 95 n.1.  Here, Glover and Shanks are directors and officers in the same corporation.  We will not infer a

### i.      Specific jurisdiction under the co-conspirator theory.

"The availability of the conspiracy theory of jurisdiction is a question of state law . . . but our Court of Appeals has not adopted this theory of jurisdiction." *Doe v. Hesketh*, 15 F. Supp.3d 586, 595 (E.D. Pa. 2014). Despite the Third Circuit not adopting this approach, courts within this Circuit have shown a willingness to examine the conspiracy theory of jurisdiction if the facts of the case warrant its application. *See Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 846 F. Supp. 374, 379 (E.D. Pa. 1994), aff'd, 107 F.3d 1026, 1042 (3d Cir.), cert. denied, 522 U.S. 907, 118 S.Ct. 264, 139 L.Ed.2d 191 (1997); *Santana Prods., Inc. v. Bobrick Washroom Equip.*, 14 F. Supp. 2d 710, 718-21 (M.D. Pa. 1998).

For a non-forum co-conspirator to be subject to personal jurisdiction, Pennsylvania law requires that "plaintiff must allege that substantial acts in furtherance of the conspiracy occurred within the forum state and that the foreign defendant was, or should have been, aware of them." *Hesketh*, 15 F. Supp.3d at 595. It is not enough that the non-forum co-conspirator is part of the conspiracy as plaintiff must plead the defendant's involvement with specificity. *Id.* (citing *Aluminum Bahrain B.S.C. v. Alcoa Inc.*, 866 F. Supp. 2d 525 (W.D. Pa. 2012)).

To show specific jurisdiction over Glover for its fraudulent inducement to accept the Guaranty/conspiracy claim (Count II) Sugartown submits documents, including Shanks' deposition and corporate financial documents arguing that Shanks "negotiated the pertinent transaction with Sugartown in Pennsylvania, transmitted pertinent misrepresentations to Sugartown's Pennsylvania offices on behalf of Glover, and caused Shanks' and Glover's sham corporation (i.e. Outlook) to contractually agree to make payments to Sugartown in Pennsylvania." (ECF Doc. No. 13-2, Pl.'s Mem., 12.)

---

partnership between Glover and Shanks or find that they were agents for each other rather than for Outlook.

Sugartown's arguments are belied by its filed Opposition relying on Shanks' testimony that Steve McKee alone conducted the negotiations with Sugartown:

> Q: And then what was – when did you – I guess tell me about how the arrangement    between Lilly, HFI and Outlook came about.
>
> A: HFI entered into a licensing agreement with Lilly.
>
> Q: Okay.
>
> A: **I knew there were discussions, but I was not part of the negotiation**.
>
> . . .
>
> Q: So, as I understand it, **Steve McKee was the person solely involved in the negotiations with [Sugartown]** and then at some time, you learned from him that the agreement would require a guarantor?
>
> A: Yes.

(*Id.*, Ex. A, part 2, 5-6.)  Shanks' admissions confirm he played no part in the negotiations between Sugartown and HFI.   There is no contrary evidence.  As a result, it seems unlikely, if not impossible, for Shanks to have undertaken "substantial acts in furtherance of the conspiracy" in Pennsylvania.  *Hesketh*, 15 F. Supp. 3d at 595.

Sugartown counters that Shanks caused Outlook to agree to make payments to Sugartown in Pennsylvania.  (ECF Doc. No. 13-2, Pl.'s Opp., 12.)  Yet, this was not a substantial act in furtherance of the conspiracy.  *Hesketh*, 15 F. Supp. 3d at 595.  Nor was it an act that occurred in Pennsylvania.  While Shanks signed the Guaranty, he signed it at the United States consulate in Vietnam.  (ECF Doc. No. 19, Def.'s Reply, Ex. A, 2.)  Sugartown fails to show that there was a single "substantial act in furtherance of the conspiracy" taken by Shanks in Pennsylvania. Imputing Shank's alleged Pennsylvania conduct to Glover under the co-conspirator theory is inappropriate with regard to the fraudulent inducement/conspiracy claim (Count II).

### ii.    *Specific jurisdiction over the unjust enrichment claim.*

When evaluating quasi-contractual claims such as unjust enrichment, the Court must employ a "realistic approach."  *Fetter v. North Am. Alcohols, Inc.*, No. 06-4088, 2007 WL 551512, at *6 (E.D. Pa. Feb. 15, 2007) (dismissing breach of quasi contract claim where defendants lacked minimum contacts).  "The Supreme Court has stated that even a single contact can support jurisdiction so long as it creates a substantial connection with the forum." *Id.* Sugartown fails to establish that Glover possessed the requisite minimum contacts required for this Court to exercise personal jurisdiction over Glover.  Sugartown cannot point to a single relevant contact that Glover has with the forum.  *Id.* (dismissing quasi-contractual claim against defendants with no relevant forum contacts).   We decline to exercise specific personal jurisdiction over Glover on the unjust enrichment claim (Count III).[5]

### iii.    *Specific Jurisdiction under the "effects test" for the tort claims.*

Sugartown alternatively argues that Glover is subject to the specific jurisdiction under the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984).[6]  In *Calder*, the Supreme Court held personal jurisdiction is proper over a non-resident defendant whose <u>tortious</u> activity outside the forum was "aimed" at the forum such that the plaintiff felt the "effects" of the action within the

---

[5] Shanks elected not to contest personal jurisdiction, but it appears that many of these findings relating to the fraudulent inducement to sign the Guaranty/conspiracy may also apply to him.

[6] The "effects test" applies to each intentional tort claim here.  Glover asserts that fraudulent transfer claim is not an intentional tort but rather a statutory cause of action.  (ECF Doc. No. 19, Def.'s Reply, 2-3.)  For support, Glover cites numerous cases from outside of this Circuit.  We find these cases unpersuasive.  A cause of action for fraudulent transfer is more akin to a tort.  *Gambone*, 288 F. App'x at 14; *State Farm*, 543 F. Supp. 2d at 431 (finding fraudulent conveyance "a species of the intentional tort of fraud").  Sugartown alleges that Shanks and Glover engaged in this conduct "intentionally" which suggests the claim is "analogous to an intentional tort."  *Brotherhood of Locomotive Eng'rs and Trainmen v. United Transp. Union*, 413 F. Supp. 2d 410, 419 (E.D. Pa. 2005).  The first prong of the *IMO Indus.* "effects test" is satisfied.

forum.  *Id.* at 788-89.  Narrowly interpreting the "effects test" in *Calder*, our Court of Appeals formulated a three-prong approach under which we evaluate minimum contacts in the case of an intentional tort:

> (1) The defendant must have committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus., Inc. v. Kiekart AG*, 155 F.3d 254, 265 (3d Cir. 1998).  If the plaintiff establishes these three elements, the court can exercise jurisdiction over a defendant "even when the defendant's 'contacts with the forum alone . . . are far too small to comport with the requirements of due process' under our traditional analysis."  *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007 (quoting *IMO Indus.*, 155 F.3d at 259).

Here, the critical inquiry is whether Glover "expressly aimed his tortious conduct" at Sugartown in Pennsylvania.  *IMO Indus.*, 155 F.3d at 265.  We do not consider the other factors if we find Glover did <u>not</u> expressly aim his conduct at the forum.  *Id.* at 266.  Sugartown points to two significant actions allegedly undertaken by Glover. First, Sugartown alleges that Glover and Shanks knew Outlook was in financial trouble and yet, as directors, directed substantial payments to themselves.  Second, Sugartown alleges that Glover and Shanks essentially stripped Outlook of "a number of its assets for essentially no consideration" while transferring these assets to themselves or controlled entities. (ECF Doc. No. 13-2, Pl.'s Resp., 11.)

Personal jurisdiction over Glover is unique due to the nature of the alleged tort. Generally, "specific jurisdiction cannot be exercised over defendants against whom intentional tort claims have been asserted where the only connection to the forum is the plaintiff's location in the forum." *Isaacs v. Trustees of Dartmouth College*, Civ. A. No. 13-5708, 2014 WL 4186536, at *11 (E.D. Pa. Aug. 25, 2014) (citing *Marten*, 499 F.3d at 299). Foreseeability of plaintiff's injury in the forum is usually not sufficient to establish personal jurisdiction under the "effects test." *IMO Indus.*, 155 F.3d at 265 ("Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement."). The plaintiff must "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 266.

Sugartown argues that Glover knew any injury resulting from the transfer of assets would injure Sugartown in Pennsylvania. While Glover may have known that Sugartown was in Pennsylvania and may have felt the effects of any tortious behavior there, "knowledge that the plaintiff is located in the forum . . . alone is insufficient to satisfy the targeting prong of the effects test." *Id.* Glover tellingly does not provide any business justification for the transfers that would have a basis unrelated to Sugartown.

As there is apparently no other business reasons for these transfers based on this record, we find fraudulently transferring assets to avoid the specific Guaranty obligations constitutes conduct "expressly aimed" at Pennsylvania. *See e.g.*, *Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 13-14 (3d Cir. 2008) (finding specific personal jurisdiction over transferee of fraudulent conveyance under "effects test"); *State Farm Mut. Auto. Ins. Co. v. Tz'Doko V'Chesed of Klausenberg*, 543 F. Supp. 2d 424, 430-31 (E.D. Pa. 2008) (finding liquidation of company to avoid Pennsylvania judgment was "expressly aimed at the forum state"); *C.D.*

*Acquisition Holdings, Inc. v. Meinershagen*, No. 05CV1719, 2007 WL 184796, at *5 (W.D. Pa. Jan. 22, 2007) ("Although . . . none of [defendants'] physical or metaphysical conduct took place *in* Pennsylvania, their conduct certainly was directed *at* Pennsylvania.") (emphasis in original). Our finding is distinct from *IMO Industries'* lesson that mere foreseeability of injury in the forum is not enough to subject an intentional tortfeasor to personal jurisdiction. Here, in challenges to asset transfers and related conduct that are temporally close to the default and with no other explanation for why Glover was part of the alleged fraudulent transfers, we find that Glover expressly aimed his conduct at Pennsylvania with regard to the alleged fraudulent transfers. As three of the five counts arise from the "transfer" conduct after learning of HFI's probable default, we exercise personal jurisdiction over the piercing of the Outlook's corporate veil (Count I), the PUFTA claim (Count IV) and the breach of fiduciary duty claim (Count V).

However, under the "effects" test, we cannot exercise personal jurisdiction over Glover for the fraud/common law conspiracy claim relating to the inducement of the Guaranty (Count II). We already found that Shanks' acts cannot be attributed to Glover. Sugartown has pointed to no other conduct attributable to Glover with regard to the fraud claim that could be considered "expressly aimed" at the forum. The only allegations of Glover's involvement with misrepresentations to Sugartown is that Shanks did so "on behalf" of Glover. This is insufficient. Accordingly, we decline to exercise specific personal jurisdiction over the fraud and common law conspiracy claim against Glover.

The last prong of the Calder test is whether Sugartown felt the effects of the tortious conduct related to the alleged fraudulent transfers in Pennsylvania. Sugartown is a Pennsylvania limited liability company that has a Pennsylvania judgment it is attempting to enforce. Accordingly, this prong of the "effects test" is satisfied.

### iii.    *Fair Play and Substantial Justice*

We now examine whether exercising specific personal jurisdiction over Glover "comport[s] with fair play and substantial justice." *Miller Yacht Sales*, 384 F.3d at 97 (alteration in original) (citation omitted).  We consider: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477.  "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must create a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *O'Connor*, 496 F.3d at 324 (quoting *Burger King*, 471 U.S. at 477).

Glover currently lives in China.  We recognize that his burden litigating here is not taken lightly.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1979) (noting that the burden on defendant is of "primary concern").  Outlook and its subsidiaries are located throughout Asia and these venues have an interest in protecting their domestic corporations. *O'Connor*, 496 F.3d at 325 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).  However, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burden placed on alien defendant." *Asahi*, 480 U.S. at 114.  Pennsylvania has a "manifest interest in providing effective means of redress" for Pennsylvania corporation Sugartown in its attempt to set aside allegedly fraudulent transfers.  *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957). Accordingly, we find Glover has not made a "compelling case" for declining to exercise jurisdiction because it would offend the traditional notions of fair play and substantial justice.

**B.      Does Sugartown state a claim for the remaining counts?**

Having found the exercise of personal jurisdiction proper over Glover with regard to the counts arising from the alleged fraudulent transfers when Defendants allegedly knew that Sugartown would call the Guaranty, the Court now determines that Sugartown has alleged sufficient facts to support its claims against Defendants for fraudulent transfers (Count IV) and breach of fiduciary duty (Count V).

A Rule 12(b)(6) motion to dismiss examines the complaint's sufficiency.  *See Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).   Under Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir.2010) (alteration in the original) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993))   A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), which gives the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' "  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alteration in original) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).   Any "pleading offering only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' "  *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The complaint need not contain "detailed factual allegations" " 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.' "  *Warren Gen. Hosp.,* 643

F.3d at 84 (quoting *Fowler,* 578 F.3d at 210).   In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient " 'to raise a right to relief above the speculative level.' " *West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank,* 712 F.3d 165, 169 (3d Cir.2013) (quoting *Twombly,* 550 U.S. at 555).

> ### i.      *Sugartown cannot presently state a claim for piercing the corporate veil*

Under Pennsylvania law, the corporate form may be disregarded "whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless." *Ashley v. Ashley*, 482 Pa. 228, 393 A.2d 637, 641 (Pa. 1978).   However, there is a strong presumption against piercing the veil.   *See Lumax Indus., Inc. v. Aultman*, 543 Pa. 38, 669 A.2d 893, 895 (1995).   "Piercing the corporate veil is admittedly an extraordinary remedy preserved for cases involving exceptional circumstances."   *Village at Camelback Prop. Owners Ass'n, Inc. v. Carr*, 371 Pa. Super. 452, 538 A.2d 528, 533 (Pa. Super. Ct. 1988).   "[T]he standard a party must meet to persuade a court to pierce the corporate veil is a stringent one." *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 509 (E.D. Pa. 2014) (citing *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) ("Such a burden is notoriously difficult for plaintiffs to meet.")).

While there appears to be no "clear test or well settled rule in Pennsylvania" as to when the corporate veil may be pierced, courts weigh certain relevant factors.   *Fletcher-Harlee Corp. v. Szymanski*, 936 A.2d 87, 95 (Pa. Super. Ct. 2007) (citations omitted).   These factors include "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and the use of the corporate form to perpetrate a fraud."   *Lumax Indus., Inc. v. Aultman*, 543 Pa. 38, 669 A.2d 893, 895 (1995).   "These factors are not exhaustive, nor is every element required for a finding of liability; however, the situation must present 'an element of injustice or fundamental unfairness.' " *Siematic Mobelwerke GmbH &*

*Co. KG v. Siematic Corp.*, 643 F. Supp. 2d 675, 695 (E.D. Pa. 2009) (quoting *Trustees, Nat. Elevator Indus. Pension v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003)).

"Piercing the corporate veil is not an independent cause of action, but it is an equitable remedy that may be imposed by the court to "redress[] a wrong by the expedient of ignoring the legal fiction that a corporation's existence is separate from that of its owner." *Siematic*, 643 F. Supp. 2d at 694 (citation omitted) (alteration in original).

Here, Sugartown frames this equitable remedy as a cause of action. On this ground alone, Count I is dismissed. Looking to the substance, Sugartown's pleading to pierce Outlook's corporate veil runs the spectrum of theories. Sugartown alleges that Outlook was grossly undercapitalized, that Glover and Shanks disregarded corporate formalities, substantially intermingled personal and corporate affairs, misused the corporate form to perpetrate a fraud, and that the other Outlook entities were merely a fiction.

Aside from labels, conclusions and a formulaic recitation of factors, the Complaint is devoid of any factual allegations that can support piercing the veil based on disregarding corporate formalities and substantially intermingling personal and corporate affairs. The Complaint contains no facts regarding these factors. Sugartown also fails to state a claim for undercapitalization. Gross undercapitalization is of particular importance in a veil-piercing analysis. *See Trustees, Nat. Elevator Indus. Pension Lutyk*, 140 F. Supp. 2d 447, 458 (E.D. Pa. 2001). The Complaint lacks the requisite factual support that Outlook was undercapitalized. Sugartown does not allege that Outlook was undercapitalized at any relevant time until after the transfers. Outlook was sufficiently capitalized to make payments of approximately $5.5 million dollars to its subsidiaries in the years 2010 and 2011. (ECF Doc. No. 13, Pl.'s Mot., Ex. A part 5, 3.)

The majority of the Complaint outlines Defendants' alleged self-dealing transfers for little or no consideration as Outlook's fiduciaries. Sugartown argues that Shanks' and Glover's fraudulent and fiduciary misconduct abused the corporate form to perpetrate a fraud. Sugartown asserts that when it was clear that HFI was going to default on the Agreement, Shanks and Glover, as Outlook's fiduciaries, conspired to strip it of assets. (ECF Doc. No. 1, Compl., ¶¶ 28-29.) Specifically, Shanks and Glover authorized payment of over $5,000,000 to the various Outlook subsidiaries. (*Id.* ¶ 30.) In March 2012, Shanks and Glover formed Outlook Sge, of which they were co-owners and the only board members. (*Id.* ¶ 35.) Then, in July 2012, prior to receiving Sugartown's notice of default, Shanks and Glover, as Outlook directors, authorized the sale of most of its assets to Outlook Sge. (*Id.* ¶¶ 37-39.) Sugartown further alleges that Glover and Shanks transferred these assets to Outlook Sge without receiving adequate consideration. (*Id.* ¶ 38-39.)

These specific facts create a plausible claim that, at a minimum, Outlook engaged in fraudulent transfers creating individual liability for Shanks and Glover. However, there is no other fact on the present record to warrant setting aside Outlook's corporate veil. There are no "specific, unusual circumstances" that call for an exception to the "general rule that the corporate entity should be recognized and upheld." *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 353 (3d Cir. 2001). There are no pled facts that Glover and Shanks ignored corporate formalities or financial independence to affect these transfers. Self-dealing, fraudulent transfers and fiduciary misconduct do not alone "abuse the corporate form"; if so, every claim for breach of the duty of loyalty or fraudulent transfer by a controlling principal would create a risk of setting aside the corporate veil. The exception would otherwise swallow the rule.

As we hold below that Sugartown may proceed on its fraudulent transfer and fiduciary duty claims, it may find additional evidence of abuse of Outlook's corporate form.  Accordingly, we dismiss Count I without prejudice.

### ii.      Sugartown states a PUFTA claim.

The PUFTA provides several situations where a transfer may be deemed fraudulent. "First, a debtor's transfer is fraudulent, regardless of whether the creditor's claim arose before or after the transfer, if the debtor transferred 'with actual intent to hinder, delay or defraud any creditor of the debtor.' "  *Klein v. Weidner*, Civ. A. No. 08-3798, 2010 WL 571800, at *5 (E.D. Pa. Feb. 17, 2010) (quoting 12 Pa. Con. Stat. § 5104(a)(1)).   A debtor's transfer may also be fraudulent as to present and future creditors if the debtor made the transfer:

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> (i) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa. Con. Stat. § 5104(a)(2).  Lastly, a transfer is fraudulent to present creditors if "the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or . . . became insolvent as a result . . . ." *Id.* § 5105.

A court may consider a number of factors in determining whether "actual intent" exists under subsection (a)(1), including whether "the debtor retained possession or control of the property transferred after the transfer", "the transfer was of substantially all of the debtor's assets", and "the value of the consideration received by the debtor was reasonably equivalent to

the value of the asset transferred or the amount of the obligation incurred." *Id.* § 5104(b). Accepting as true the factual allegations in the Complaint, we find there to be several "badges of fraud" present to preclude dismissal at this stage in the litigation.

Further, even if the "badges of fraud" were not enough to show actual intent, we find that Sugartown pled sufficient facts to establish the presence of a constructive fraud under subsection (a)(2)(ii). A transfer is fraudulent under that section when the transfer is made and the debtor "intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." 12 Pa. Con. Stat. § 5104(a)(2)(ii). Sugartown states that Glover and Shanks were aware that HFI was in financial trouble and was likely to default on the Agreement. (ECF Doc. No. 1, Compl., ¶¶ 29-40, 60.) After becoming aware of this potential default, Outlook made many of these allegedly fraudulent transfers to Outlook Sge and other non-party entities. (*Id.*) Sugartown alleges that Outlook did not receive adequate consideration for any of the transfers. (*Id.* ¶¶ 33, 38-39.) These factual allegations support a claim of constructive fraudulent transfer.

Glover argues that he cannot be liable for the transactions between Outlook and other Outlook entities. Sugartown provides no argument to the contrary. Nonetheless, we find that Glover may be liable for the fraudulent transfer as he may have been "the person for whose benefit the transfer was made." 12 Pa. Con. Stat. § 5108(b)(1). Where a creditor is entitled to recovery of fraudulently transferred assets, the judgment may be entered against "the first transferee of the asset or the person for whose benefit the transfer was made." *Id.* Glover's invocation of *In re DBSI, Inc.*, 445 B.R. 351 (Bankr. D. Del. 2011), for the proposition that he did not receive a benefit from the transfer even though he controls both entities is misplaced. In *In re DBSI, Inc.*, the individual defendant was only in control of the transferee corporation rather

than both the transferor and the transferee corporations as is the factual scenario in this instance. *In re DBSI, Inc.*, 445 B.R. at 356.   Both Shanks and Glover maintained control over the transferred assets through Outlook Sge free of any obligation to use the assets to satisfy the judgment against Outlook.  *See Carroll v. Stettler*, Civ. A. No. 10-2262, 2013 WL 2370566, at *3 (E.D. Pa. Nov. 12, 2010) (finding individual defendants were those who benefited from the transfer because "one possible manner in which to demonstrate benefit from the transaction is ownership over the corporation receiving the transaction"); *see also Schwartzman v. Rogue Intern. Talent Grp., Inc.*, Civ. A. No. 12-5255, 2013 WL 5948028, at *2 (E.D. Pa. Nov. 7, 2013); Gregory M. Monaco, *A Practicioner's Primer on the Pennsylvania Uniform Fraudulent Transfer Act*, 86 Pa. B.A.Q. 18, 40 (2015) (a person for whose benefit the transfer was made may include "the transferee's shareholders or successor entities").

We find, construing the factual allegations as true, it is plausible that Glover and Shanks received the benefit of having made the transfers as they are Outlook's sole shareholders and now obtain the benefits of Outlook's assets both individually  (Compl., ¶¶ 28, 34, 39) and possibly as the control persons of the non-party Outlook Sge and other non-party transferees. Consistent with our ruling not presently allowing a piercing of Outlook's corporate veil and absent a judgment against the non-parties, we will not permit Sugartown to pierce the corporate veil of non-parties to impose liability on Defendants.   This is a different claim.  However, this PUFTA claim may create individual liability upon Shanks and Glover if discovery into the transfers and control over their personal assets uncovers any of these former Outlook assets for the purpose of showing Shanks and Glover benefited from the transactions.   Otherwise, Sugartown will need to obtain a judgment directly against the non-party corporate transferees

and then attempt to pierce the veil of those non-parties.  It cannot accomplish that step in this case absent those non-parties. Fed.R.Civ.P. 19.

### iii.        Sugartown states a breach of fiduciary duty claim.

As officers, directors, and controlling shareholders, Shanks and Glover have a fiduciary duty to Outlook.  When Outlook becomes insolvent, they then owe a fiduciary duty to the corporation's creditors.  *See Travelers Cas. and Sur. Co. v. Irex Corp.*, No. 02-2142, 2002 WL 32351176, at *3 (E.D. Pa. May 31, 2002) (denying motion to dismiss breach of fiduciary duty).

Glover argues that Sugartown fails to state a claim for breach of fiduciary duty because the Complaint does not allege that Outlook was insolvent at the time the alleged fraudulent transactions were made.  (ECF Doc. No. 11-2, Def.'s Mem, 28.)    While it may be true that the Complaint does not explicitly state that Outlook was insolvent at the time of the alleged transfers, the Complaint argues that the alleged fraudulent transfers by Outlook, vis-à-vis Shanks and Glover, left Outlook unable to make the payments according to the Guaranty.    The Complaint alleges that Shanks and Glover intentionally left Outlook insolvent.

At this stage, we find this factual question is better resolved after discovery.  Sugartown's present factual allegations rise above the speculative level.    *See Engle v. Matrix Golf & Hospitality Philadelphia, LLC*, Civ. A. No. 08-5831, 2009 WL 880680, at *6 (E.D. Pa. Mar. 31, 2009) (denying motion to dismiss breach of fiduciary duty claim where complaint does not allege corporation was insolvent at time of transfers but rather that the transfers left the corporation unable to make loan payments to creditor).

### iv.        Non-party transferees are necessary and indispensable parties for the constructive trust, accounting and receiver claims over their assets.

In its fraudulent transfer claim (Count IV), Sugartown seeks a receiver, accounting and constructive trust on assets transferred to non-party transferees.   Under Rule 19, Sugartown cannot proceed on these claims without including these transferees.

Under Rule 12(b)(7), a party may move to dismiss a complaint for "failure to join a party under Rule 19." Fed.R.Civ.P. 12(b)(7). "Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory." *General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007).   The Rule 19 analysis is a two-step process.

First, a court must determine whether an absent party should be joined as "necessary" under Rule 19(a). *General Refractories*, 500 F.3d at 312.   Rule 19(a)(1) provides for parties required to be joined "if feasible:"

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a)(1).

Second, if we determine that an absent party is "necessary," but joinder is not "feasible" because it would defeat diversity, a court must then determine whether "in equity and good conscience" the action should proceed without that party, or whether the court should dismiss it,

"the absent person being thus regarded as indispensable." *General Refractories*, 500 F.3d at 312 (citing Fed.R.Civ.P. 19(b)).

Generally, in an action to set aside a fraudulent transfer, "[b]oth the debtor/transferor and the transferee are necessary parties to the fraudulent transfer action." *Universal Computer Consulting, Inc. v. Pitcairn Enterps., Inc.*, No. Civ. A. 03-2398, 2005 WL 2077269, at *15 (E.D. Pa. Aug. 26, 2005). A court may not award injunctive relief against a non-party to the action. *Vital Pharms., Inc. v. USA Sports, LLC*, Civ. A. No. 11-975, 2012 WL 760561, at *9 (M.D. Pa. Mar. 8, 2012).

We find this rule applicable here. Sugartown is seeking alternative remedies under PUFTA. First, Sugartown seeks a judgment against Shanks and Glover for the full value of the fraudulently transferred assets, ostensibly under the theory that Shanks and Glover are the persons for whose benefit the transfers were made. (ECF Doc. No. 1, Compl., ¶ 62.) In the alternative, Sugartown requests the Court void the transfers and impose a constructive trust on all of the assets transferred. (*Id.*) The first remedy against Shanks and Glover does not make the transferee companies necessary to the action. However, for the alternative remedies of a constructive trust, receiver and accounting, we cannot accord complete relief without the joinder of the transferee entities. *See Vital Pharms.*, 2012 Wl 760561, at *9.

We find that to the extent Sugartown is seeking to impose a constructive trust, receiver and accounting of the assets controlled by transferee entities, they are necessary and indispensable parties. Glover's motion to dismiss for failure to join indispensable parties is granted to the extent Sugartown seeks a constructive trust, receiver and accounting for the assets controlled by Outlook Sge and other transferee entities. Sugartown may not proceed on the equitable claims relating to assets allegedly held by non-parties.