# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUGARTOWN WORLDWIDE LLC** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO. 14-5063** |
| | : | |
| **SHANKS,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                    **September 14, 2015**

Judgment creditors knowingly have a difficult burden under Pennsylvania law when seeking to pierce corporate veils of either successor entities or individual control persons of a judgment debtor. The creditor must initially plead some form of extraordinary *ultra vires* control by the non-debtor which allows this Court, as a matter of equity, to view the debtor and non-debtors as the same entity. The overriding principle is the non-debtor controls the judgment debtor for personal benefit. We review facts evidencing a commingling of accounts, failing to adhere to corporate formalities and using the entity to commit fraud or injustice to further personal interests. The judgment creditor here has pled, after extensive discovery, personal jurisdiction on a piercing the corporate veil claim over the control persons of the corporate judgment debtor and a company alleged to be a mere continuation or successor of the judgment debtor. The judgment creditor has also now plead the extraordinary circumstances possibly allowing this Court to pierce the corporate veil of the judgment debtor to its control persons based on their admitted personal interest in avoiding personal liability through fraudulent transfers, but not to pierce the veil of the non-debtor successor company controlled by the same persons. In the accompanying Order, we grant in part, and deny in part, the individual Defendant control persons' motions to dismiss the Plaintiff's "action to enforce judgment" claim.

## I.   FACTS PLEAD AND ADDUCED IN JURISDICTIONAL DISCOVERY

As more fully described in our March 24, 2015 Memorandum (ECF Doc. No. 21)[1], Plaintiff Sugartown Worldwide LLC ("Sugartown") holds a multi-million dollar default judgment against a corporate guarantor Outlook International Limited ("Outlook Hong Kong"). Defendants Kenneth Linn Shanks ("Shanks") and James Michael Glover ("Glover") own and control the lead debtor HFI Brand, Inc. and its guarantor Outlook Hong Kong, an entity incorporated under Hong Kong law. First Amended Complaint at ¶¶7, 12 (ECF Doc. No. 52). Shanks and Glover also exclusively own and control Outlook International (SG) PTE, Ltd. ("Outlook Singapore") existing under the laws of the Republic of Singapore. *Id.* ¶ 7. After declaring a default in the royalty payments in late October 2012, Sugartown filed suit and entered default judgment against Outlook Hong Kong for $5,970,390.75 in March 2013. *Id.*¶¶ 22-25.

Knowing Outlook Hong Kong would lose customers and substantial revenue in 2012 and Sugartown declared HFI and Outlook Hong Kong in default, Shanks and Glover directed Outlook Hong Kong to distribute approximately $1.5 million in salary and dividends to them in 2011 and 2012. *Id.* ¶ 28. In March 2012, Shanks and Glover formed Outlook Singapore. *Id.* ¶ 29. Beginning in approximately May 2012, Outlook Hong Kong diverted substantial portions of its business income to Outlook Singapore for no consideration. *Id.* ¶ 32. Effective July 1, 2012, Outlook Hong Kong sold two of its three subsidiaries, and all of its assets located in Vietnam, to Outlook Singapore. *Id.* ¶ 33. Effective September 1, 2012, Outlook Hong Kong sold assets from its other Southeast Asian locations to Outlook Singapore. *Id.* ¶ 34. Outlook Singapore allegedly paid Outlook Hong Kong approximately $963,000 for these assets from money provided to it by

---

[1] *Sugartown Worldwide, LLC v. Shanks and Glover*, No. 14-5063, 2015 WL 1312572 (E.D.Pa. March 24, 2015).

Outlook Hong Kong. *Id.* ¶ 36. By December 2012, Outlook Hong Kong had virtually no assets. *Id.* ¶ 45.

## II.    ANALYSIS

Sugartown seeks to pierce the corporate veils of Outlook Hong Kong and Outlook Singapore to hold Shanks and Glover liable for the default judgment against Outlook Hong Kong. Glover moves to dismiss Count I for lack of personal jurisdiction. Glover and Shanks move to dismiss for failure to state an equitable claim to pierce the corporate veils of Outlook Hong Kong and Outlook Singapore. Sugartown argues: Glover and Shanks abused Outlook Hong Kong and Outlook Singapore for their own personal interests; the corporate forms must be disregarded to avoid injustice; and Glover and Shanks fraudulently transferred Outlook Hong Kong's assets to Outlook Singapore.

In March 2015, we held Sugartown could not state an independent claim in equity against Glover to pierce the corporate veil of non-party Outlook Hong Kong. (ECF Doc. No. 21). Now, after discovery, we review Sugartown's First Amended Complaint with substantial detail and additional Defendants Outlook Hong Kong and Outlook Sugartown mindful of Pennsylvania's strong presumption against piercing the corporate veil. *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). As we recited in our March 24, 2015 Memorandum, Pennsylvania law will permit courts to disregard the corporate form "whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless." *Ashley v. Ashley,* 393 A.2d 637, 641 (Pa. 1978).

We find Sugartown has now specifically alleged the exceptional circumstances for Shanks' and Glover's alter ego liability under an "action to enforce" its judgment against Outlook Hong Kong. There is no judgment against Outlook Singapore falling within the scope

3

of Sugartown's "action to enforce judgment" in Count I. Further, even assuming Sugartown seeks to pierce Outlook Singapore's corporate veil to hold Shanks and Glover liable under Count II (as not presently pled), we find no pleading of Shanks' and Glover's personal benefit from fraud allegedly perpetrated by Outlook Singapore to hold each of them as an alter ego of Outlook Singapore.

**1. We may exercise personal jurisdiction over Glover for alter ego liability.**

Exercising jurisdiction over a corporate control person who is alleged to be an entity's alter ego is compatible with due process when we can properly exercise jurisdiction over the entity based on the premise the alter ego is the "same entity." *Sys. Div., Inc. v. Teknek Elecs. Ltd.*, 253 F. App'x 31, 37 (Fed. Cir. 2007); *Hitachi Med. Sys. Am., Inc. v. Branch*, No. 09-1575, 2010 WL 816344, *5 (N.D.Ohio March 4, 2010). *See also Bell v. Fairmont Raffles Hotel Int'l, et al.*, No. 12-757, 2013 WL 6175717, *3 (W.D. Pa. Nov. 25, 2013) (test for personal jurisdiction over related entities); *Davlyn Manufacturing Co, Inc. v. H&M Auto Parts, Inc.*, 414 F.Supp.2d 523, 531-32 (E.D.Pa. 2005) (same). We first determine whether Sugartown pleads a *prima facie* case of alter ego against Glover. Our jurisdictional analysis over an alleged alter ego is "a less onerous standard" than we apply under Fed.R.Civ.P. 12(b)(6) for piercing the corporate veil for liability purposes. *Bell*, 2013 WL 6175717 at *3; *Hitachi Med. Sys. Am. Inc., at *5* (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

We find personal jurisdiction over Glover if we have personal jurisdiction over the entity. We denied motions to dismiss from Outlook Hong Kong (ECF Doc. No. 69) and Outlook Singapore (ECF Doc. No. 70) finding these entities did not establish a basis for lack of personal jurisdiction in their motions to dismiss. As detailed below, while we do not presently find Sugartown pleads enough facts regarding Glover's personal benefit of alleged fraud through

Outlook Singapore to apply an alter ego theory piercing Outlook Singapore under Pennsylvania substantive law, we find personal jurisdiction over Defendant Glover for this claim under the less onerous standard applied to jurisdictional analysis. "[I]n deciding whether to pierce the corporate veil so as to assert personal jurisdiction over a corporate officer or director, the court should only look to the question of whether the corporation was a shell for the person; it does not require then that the shell be known to have been involved in fraud." *Cabell Fin. Corp. v. Gurr*, No. 12-473, 2012 WL 6568237, *2 (N.D. Ohio Nov. 27, 2012) (citing *Marine Midland*, 664 F.2d at 904).

Sugartown argues Glover knew of, and signed documents relating to, Outlook Singapore's role in receiving Outlook Hong Kong's assets. We find the pleading of his knowledge and co-ownership may evidence Outlook Singapore served as a shell and thus meets the less onerous jurisdictional test, even though these allegations without more specificity do not state Glover's personal benefit in any fraud perpetrated through his alleged control of Outlook Singapore.

### 2. Sugartown pleads facts to pierce the corporate veil of Outlook Hong Kong but not Outlook Singapore.

Shanks and Glover argue Sugartown has not pled facts allowing exercise of equity powers to pierce the corporate veils of a Hong Kong corporation and a Singapore corporation. Under conflicts of laws analysis, we may apply the law of incorporation venue or this forum after determining whether, under Pennsylvania law, the laws of Hong Kong or Singapore apply. As recently addressed by Judge Beetlestone, Shanks and Glover fail under Fed.R.Civ.P. 44.1 to "carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case." *Incubadora Mexicana, SA de CV v. Zoetis, Inc. et al.,* No. 15-216, 2015 WL 4598031, *6

5

(E.D.Pa. July 31, 2015) (quoting *Bel-Ray Co., Inc. v. Chemrite Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999)). Absent Defendants' compliance, we apply Pennsylvania law even though the law of Hong Kong or Singapore could apply. *Walter v. Netherlands Mead N.V.*, 514 F.2d 1130, 1137 n.14 (3d Cir. 1975).

Under Pennsylvania law, "…courts are basically concerned with determining if equity requires that the shareholders' traditional insulation from personal liability be disregarded and with ascertaining if the corporate form is a sham, constituting a façade for the operations of the dominant shareholder." *Fletcher-Harlee Corp. v. Szymanski*, 936 A.2d 87, 96 (Pa. Super. 2007) (quoting *The Village of Camelback Property Owners Association, Inc. v. Carr et al.*, 539 A.2d 528, 532-33 (Pa. Super. 1988)).

We will not use our equity powers to impose alter ego liability upon corporate control persons for every fraud allegedly perpetrated by a corporation. Alter ego liability for control persons is not the same as a tort participation theory of liability. *Cf. Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983). Corporate control persons do not become liable to creditors for corporate guarantor obligations as alter egos based solely on their business decisions possibly motivated to frustrate a corporate creditor's recovery unless there is a personal benefit as evidenced by commingling, lack of corporate formalities or other similar indicia showing the entity is the same as its control persons. While "puppetry" may create tort liability as alleged here, such control alone does not transform a corporate debt obligation into a personal judgment obligation of individual control persons under an alter ego theory. Unlike its reliance on a series of cases imposing "alter ego" liability, Sugartown did not plead Outlook Hong Kong's or Outlook Singapore's assets are also Shanks' or Glover's assets. *Ashley*, 393 A.2d at 237-38; *Advanced Telephone Systems, Inc. v. Com-net Professional Mobile Radio, LLC*, 846 A.2d 1264,

1280 (Pa. Super. 2004). Sugartown also does not plead undercapitalization of Outlook Hong Kong when it guaranteed debt to Plaintiff or as to Outlook Singapore. *See Morelia Consultants, LLC v. RCMP Enterprises, LLC,* No. 10-432, 2011 WL 4021070 (M.D. Pa. Sept. 9, 2011) (alleging debtor entity always undercapitalized).

Sugartown did not obtain Shanks' and Glover's guaranty and cannot now, based on long-known control of Outlook Hong Kong, transform them into a guarantor of Outlook Hong Kong's judgment obligation unless it shows some personal benefit arising from fraud perpetrated by Shanks and Glover while dominating Outlook Hong Kong. Sugartown adequately pleads tort claims under the participation theory against Shanks and Glover. It cannot, absent some personal benefit arising from using Outlook Hong Kong to protect themselves through fraud, transform these torts automatically into facts to pierce the corporate veils.

### a. Sugartown states a claim for alter ego liability for Outlook Hong Kong.

Notwithstanding Sugartown's inability to plead a commingling or undercapitalization theory for alter ego, it states a claim subject to discovery for alter ego liability as to Outlook Hong Kong based upon Shanks' and Glover's personal benefit arising from using Outlook Hong Kong as part of a shell game to hide assets available to satisfy a known judgment creditor. Sugartown specifically alleges Shanks and Glover depleted Outlook Hong Kong's assets to pay approximately $1.5 million in dividends to themselves. Sugartown specifically pleads Shanks and Glover participated in transferring assets from judgment debtor Outlook Hong Kong to non-debtor Outlook Singapore. Sugartown alleges Defendants Shanks and Glover caused these transfers to render Outlook Hong Kong incapable of meeting its guaranty obligation. At a minimum, Sugartown alleges Shanks and Glover received approximately $1.5 million when knowing of Outlook Hong Kong's default to Sugartown and then dominated and controlled

7

Outlook Hong Kong to cause it to become judgment proof by transferring assets to Outlook Singapore.[2] *Goldenberg v. Royal Petroleum Corp.* 4168 Sept. Term 2003, 2004 WL 3051577, *2 (Phila. CCP Dec. 16, 2004).

### b. Sugartown does not plead alter ego liability for Outlook Singapore.

Sugartown cannot state a claim to "enforce a judgment" against a control person of Outlook Singapore since Sugartown does not have a judgment against Outlook Singapore.

Even assuming Sugartown seeks to pierce Outlook Singapore's corporate veil because it expects to succeed on Count II (successor liability), it has not pled facts to pierce Outlook Singapore's corporate veil. Outlook Singapore is allegedly capitalized with Outlook Hong Kong's assets and opportunities. Sugartown does not allege commingling of assets or common identity of Shanks, Glover and Outlook Singapore. Distinct from Outlook Hong Kong, Sugartown does not allege Shanks and Glover committed fraud to "get off the hook" through roles with Outlook Singapore other than it receiving assets from Outlook Hong Kong. Pennsylvania's general standard for piercing the corporate veil requires, *ab initio*, the control person to use the corporate control to commit acts to "further his or her own personal interests." *The Village at Camelback*, 538 A.2d at 532-33; *see also Ginley v. E.B. Mahoney Builders, Inc.*, No. 04-1986, 2004 WL 2137820, *1 n.6 (E.D.Pa. Sept. 23, 2004) (insider allegedly converted entity funds); *College Watercolor Group, Inc. v. William H. Newbauer, Inc.,* 360 A.2d 200, 207 (Pa. 1976).

---

[2] While we do not presently consider facts outside of the First Amended Complaint, both parties cited additional facts. For example, Glover told Defendant Shanks "we are still really on the hook for this" when referring to Outlook Hong Kong's guaranty liability. At this stage, subject to a jury's evaluation of credibility, Glover's admission **"we"** are **"on the hook"** can plausibly relate to Shanks' and Glover's personal risk or could refer to HFI and Outlook Hong Kong. At a minimum, Shanks and Glover did not distinguish between the entities and their owners. We may consider this evidence, and Defendants' response, at summary judgment.

As in *Fletcher-Harlee Corp*, 936 A.2d at 101, we find Sugartown has yet to plead Shanks and Glover did anything personally to make a knowing misrepresentation in their roles at Outlook Singapore to benefit them personally. Their alleged conduct in authorizing Outlook Singapore to purchase Outlook Hong Kong's assets, while possibly creating tort liability, does not presently establish fraud sufficient to overcome Pennsylvania's strong presumption against piercing the corporate veil. *Lumax Indus, Inc.*, 669 A.2d at 895. We take "[c]are ... on all occasions to avoid making the entire theory of corporate entity...useless." *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967). Sugartown essentially alleges "Shanks and Glover" control Outlook Singapore and it participated in a scheme to pay inadequate value for Outlook Hong Kong's assets. Mere control, absent a personal benefit, does not allow us to set aside the corporate veil.

While Outlook Singapore may be liable following trial under a continuation, successor or mere instrumentality theory for Outlook Hong Kong's judgment debt under Count II, there is no present allegation sufficient to pierce Outlook Singapore's corporate veil to attach potential liability to Shanks and Glover under an alter ego theory.

### III. CONCLUSION

Sugartown's attempt to invoke this Court's equity powers to set aside corporate protections, while understandable given its tort claims, must meet Pennsylvania's strict requirements. In its First Amended Complaint following extensive discovery both here and in Asia, Sugartown plausibly pleads facts showing Shanks and Glover received direct financial benefits from controlling the judgment debtor Outlook Hong Kong and treating it, through distributions and transfers to Outlook Singapore, as a shell. As yet, it has not tied these same facts to any personal financial benefit to Shanks and Glover from Outlook Singapore.

9

Discovery is ongoing. If discovery permits, Sugartown may, under its Rule 11 obligations, reassert Shanks' and Glover's potential alter ego liability for Outlook Singapore's potential liability under Count II before trial.