**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUGARTOWN WORLDWIDE, LLC** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 14-5063** |
| | : | |
| **SHANKS,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                **MAY 6, 2016**

      To enter an enforceable final judgment, we must ensure our personal jurisdiction over an out-of-state defendant either through in-state service, consent or minimum contacts consistent with due process. Absent a defendant being "at home" in Pennsylvania, we examine personal jurisdiction over him based on contacts with Pennsylvania relating to the specific claims against him. When challenged, we need to confirm personal jurisdiction even after a judgment against him. As refined by the Supreme Court in 2014, the continually evolving judge-made due process analysis for exercising specific personal jurisdiction over a non-resident Chinese businessman for intentional torts is not altered solely because a Hong Kong or Singapore company co-owned by him defaulted on millions of dollars of contract debt owed to a Pennsylvania creditor or transferred assets to frustrate a Pennsylvania creditor's collection efforts. Standing alone, his involvement in day-to-day operations of Hong Kong and Singapore debtors does not create personal jurisdiction. His conduct found by the jury as creating substantial monetary liability for fraudulent conveyance, breach of fiduciary duty and tortious interference must also involve a substantial connection with Pennsylvania created by him, not based only on the effects of his corporate acts in Asia upon a Pennsylvania creditor. Lacking evidence of alter ego or agency liability after trial, we lack specific personal jurisdiction over the Chinese businessman and must

grant his Rule 60(b)(4) motion voiding our January 8, 2016 judgment against him alone for lack of specific personal jurisdiction.

I.  **Background**

Sugartown Worldwide, LLC ("Sugartown") wants to be paid on its $5.9 million judgment against Outlook International Limited ("Outlook Hong Kong") entered on March 19, 2013.[1] Outlook Hong Kong guaranteed payments owed by HFI Brands, Inc. ("HFI") relating to HFI's use of Sugartown's Lilly Pulitzer trademark in furniture manufactured by Outlook Hong Kong in Asia ("Guaranty"). Frustrated in collecting from HFI or Outlook Hong Kong, Sugartown sued Outlook Hong Kong's co-owners Kenneth Shanks ("Shanks") and James Michael Glover ("Glover").[2] It later amended to sue Outlook Hong Kong and its affiliate Defendant Outlook International (SG) PTE, Ltd. ("Outlook Singapore").

Glover always challenged the Court's personal jurisdiction over him. Glover swore then, as he does now, he has no contacts with Pennsylvania; he lives in Asia; and, never travelled to, or conducted business in, Pennsylvania. He moved to Asia in 1989 and only visited Pennsylvania in connection with this case.[3] Glover swears to never being involved in the financial affairs of HFI, Outlook Hong Kong or Outlook Singapore, and focused only on operations and production. He never signed any agreement with Sugartown nor authorized anyone to sign his name. He has never communicated with any agent of Sugartown concerning the documents in this case. Shanks is not his agent, power of attorney or representative.[4]

Sugartown responded the Court has specific jurisdiction over Glover under three alternative theories: co-conspirator theory; the "effects test" of *Calder v. Jones*[5]; and jurisdiction based on a partnership where Shanks had implied authority to act on behalf of Glover. We granted in part and denied in part Glover's motion and dismissed with prejudice Sugartown's

fraud/common law conspiracy and unjust enrichment claims against him for lack of personal jurisdiction.⁶ We applied the traditional test of specific jurisdiction to the unjust enrichment claim as it was neither part of the conspiracy claim subject to "co-conspirator jurisdiction" nor an intentional tort subject to the "effects test." We found Sugartown failed to establish Glover possessed the requisite minimum contacts required for our exercise of personal jurisdiction over Glover because it failed to point to a single relevant contact Glover had with Pennsylvania.

We initially found personal jurisdiction over Glover on the piercing the corporate veil,⁷ PUFTA, and breach of fiduciary duty claims based on *Calder*'s "effects test" and applied the three-prong test as directed by our Court of Appeals in *IMO Indus., Inc. v. Kiekart, AG*⁸ to evaluate minimum contacts in intentional torts. We analyzed whether Glover "expressly aimed his tortious conduct" at Pennsylvania and found, based on the allegations at that time, Glover's corporate participation in the fraudulent transfer of assets to avoid the Guaranty obligations constituted conduct "expressly aimed" at Pennsylvania.

Sugartown then amended its complaint, adding Outlook Hong Kong and Outlook Singapore as defendants and including an "action to enforce judgment" claim against Shanks and Glover.⁹ Glover moved to dismiss the Amended Complaint, again arguing lack of personal jurisdiction.¹⁰ On September 14, 2015, we granted Glover's motion repeating the reasons in our March 24, 2015 Memorandum and also dismissed the unjust enrichment claim against him for lack of personal jurisdiction.¹¹

We denied Glover's motion, finding we could exercise personal jurisdiction over him based on potential alter ego liability, a less onerous standard:

> Exercising jurisdiction over a corporate control person who is alleged to be an entity's alter ego is compatible with due process when we can properly exercise jurisdiction over the entity based on the premise the alter ego is the "same entity." *Sys. Div., Inc. v. Teknek Elecs. Ltd.*, 253 F. App'x 31, 37 (Fed. Cir. 2007); *Hitachi*

3

*Med. Sys. Am., Inc. v. Branch*, No. 09-1575, 2010 WL 816344, *5 (N.D.Ohio March 4, 2010). *See also Bell v. Fairmont Raffles Hotel Int'l, et al.*, No. 12-757, 2013 WL 6175717, *3 (W.D. Pa. Nov. 25, 2013) (test for personal jurisdiction over related entities); *Davlyn Manufacturing Co, Inc. v. H&M Auto Parts, Inc.*, 414 F.Supp.2d 523, 531-32 (E.D.Pa. 2005) (same). We first determine whether Sugartown pleads a *prima facie* case of alter ego against Glover. Our jurisdictional analysis over an alleged alter ego is "a less onerous standard" than we apply under Fed.R.Civ.P. 12(b)(6) for piercing the corporate veil for liability purposes. *Bell*, 2013 WL 6175717 at *3; *Hitachi Med. Sys. Am. Inc., at *5 (citing Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). We find personal jurisdiction over Glover if we have personal jurisdiction over the entity.[12]

On January 4, 2016, we began a five-day jury trial on the remainder of Sugartown's claims against Outlook Hong Kong, Outlook Singapore, Glover and Shanks to enforce its $5.9 million judgment against Shanks and Glover on a piercing the corporate veil theory; impose a constructive trust and accounting from Shanks and Outlook Singapore; under PUFTA against all Defendants; for breach of fiduciary duty against Shanks and Glover as directors of Outlook Hong Kong; and, intentional interference with Outlook Hong Kong's Guaranty obligation against Shanks, Glover, and Outlook Singapore.

On January 8, 2016, outside the presence of the jury, we held a charging conference with counsel to review the Court's proposed jury instructions and verdict form. Glover again challenged personal jurisdiction by including a jury interrogatory on jurisdiction.[13] We declined to charge the jury on personal jurisdiction over Glover.

The jury returned a verdict in favor of Sugartown. We entered judgment on January 8, 2016. After argument and evaluation of witness credibility and exhibits, we found Sugartown did not meet its burden to pierce Outlook Hong Kong's corporate veil to impose alter ego liability upon Shanks and Glover. We also entered judgment based on our earlier summary judgment in favor of Sugartown on its claims of successor liability[14] and on the jury verdict in favor of Sugartown on its claims of fraudulent transfer under PUFTA, breach of fiduciary duty,

4

and intentional interference with contractual relations.[15] Consistent with the jury's verdict, we entered judgment against Glover on the PUFTA claim for $2,856,822.93 in compensatory damages plus $400,000 in punitive damages; on the breach of fiduciary duty claim against Glover for $100,000 in compensatory damages plus $50,000 in punitive damages against Glover; and, on intentional interference with contractual relations claim against Glover in the amount of $300,000 in compensatory damages plus $40,000 in punitive damages.[16]

II.  **Analysis**

Glover now seeks post-trial relief: (1) to vacate the judgment as void under Fed.R.Civ.P. 60(b)(4) for lack of personal jurisdiction; (2) for a new trial under Fed.R.Civ.P. 59(a) because the jury's verdict is against the weight of the evidence; (3) to alter or amend the judgment under Fed.R.Civ.P. 59 (e); and, (4) for Findings of Fact and Conclusions of Law on the calculation of PUFTA damages by the Court under Fed.R.Civ.P. 52(a). As we lack specific personal jurisdiction over Glover, his alternative motions under Rules 52 and 59 are moot.

Glover argues the judgment against him is void for lack of personal jurisdiction over him. Under Rule 60(b)(4), a court "may relieve a party . . . from a final judgment" if "the judgment is void."[17] "A judgment is void within the meaning of Rule 60(b)(4) if the court that rendered it lacked personal jurisdiction over the defendant."[18] As Judge Robreno held in reviewing subject matter jurisdiction but the observation applies equally here, "[i]n spite of the Rule's permissive 'may,' the law is settled that a court lacks discretion under clause (4): if jurisdiction was absent, the court *must* vacate the judgment as void."[19]

Glover argues he "has no jurisdictionally relevant contacts" with Pennsylvania under *Walden v. Fiore*, challenging our earlier decisions at the motion to dismiss stage when he did not argue *Walden's* effect on our jurisdiction.[20] Glover now argues our Memorandum identifying

"the critical inquiry is whether Glover 'expressly aimed his tortious conduct' *at Sugartown* in Pennsylvania" is erroneous because it "implies that Sugartown's location in Pennsylvania rendered ANY alleged tortious conduct by Glover a contact with Pennsylvania."[21] Glover further argues "[b]y focusing on whether Glover aimed conduct *at Sugartown* and the location where Sugartown would feel the impact, the court attributed Sugartown's connection with Pennsylvania to Glover" and our analysis "substituted Glover's alleged contacts with Sugartown for the required contacts with the forum."[22]

Sugartown responds our March 24, 2015 memorandum correctly applies *Calder*'s "effects test" and, even if our March 24, 2015 memorandum is erroneous, our September 14, 2015 memorandum based jurisdiction on the alter ego theory, an alternative and less onerous basis for personal jurisdiction. Sugartown points to Glover's role as an officer and director of HFI and Outlook Hong Kong, his knowledge and authorization of Outlook Hong's Guaranty of HFI, and Outlook Hong Kong's consent to personal jurisdiction in Pennsylvania under the Guaranty.

### A. We can no longer base specific personal jurisdiction on the less onerous standard for jurisdiction based on potential alter ego liability.

On September 14, 2015, we found personal jurisdiction over Glover based on Sugartown's alter ego allegations Glover knew of, and signed documents relating to, Outlook Singapore's role in receiving Outlook Hong Kong's assets.[23] We found Sugartown's pleading of Glover's "knowledge and co-ownership may evidence Outlook Singapore served as a shell and thus meets the less onerous jurisdictional test, even though these allegations without more specificity do not state Glover's personal benefit in any fraud perpetrated through his alleged control of Outlook Singapore."[24]

With the benefit of a full hearing and trial on alter ego liability, we entered judgment in favor of Glover and Shanks and against Sugartown on its "Action to Enforce Judgment". We found Sugartown did not adduce clear and convincing evidence allowing us to disregard the existence of a separate corporation on any governing factor under Pennsylvania law, including absence of direct personal benefit arising from Glover's alleged manipulation of Outlook Hong Kong's corporate structure which would not otherwise be provided to him under any typical corporate transaction and Sugartown did not adduce evidence of any of the badges of manipulation necessary to disregard the corporate entity structure to impose guaranty liability for corporate trade debt upon Glover.[25]

Having found no alter ego liability, we cannot exercise specific personal jurisdiction over Glover based on an alter ego theory. We now examine personal jurisdiction after a full hearing on a trial record whether Glover is subject to our personal jurisdiction under *Walden v. Fiore*.

**B. Analysis of specific personal jurisdiction.**

Our Court of Appeals directs a three-part inquiry for the traditional test of whether specific jurisdiction exists: (1) the defendant must have "'purposefully directed' his activities" at the forum; (2) plaintiff's claims must "arise out of or relate to" at least one of those activities; and, if prongs one and two are met, (3) the court may consider whether the exercise of jurisdiction "comport[s] with 'fair play and substantial justice.'"[26]

Where, as here, plaintiff cannot satisfy the traditional test and seeks recovery under intentional tort claims, *Calder's* "effects test" is a "slightly refined version" of the traditional test outlined in *O'Connor*.[27] Under the *Calder* "effects test," we may exercise jurisdiction if the plaintiff shows: "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm

7

suffered by the plaintiff as a result of that tort; [and] (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."[28] In applying the "effects test," our Court of Appeals has "underscored that the scope of the law established in *Calder* is narrow, employing 'a conservative reading' to reflect the fact that *Calder* did not 'carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state.'"[29] Our Court of Appeals cautions "the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state."[30] Accordingly, we are directed to examine the "expressly aimed" prong of the "effects test" before considering the other two elements.[31]

In 2014, the Supreme Court in *Walden* again addressed the "minimum contacts" necessary to create specific jurisdiction. Whether a forum may assert specific jurisdiction over a non-resident defendant "focuses on the relationship among the defendant, the forum, and the litigation."[32] A forum's exercise of jurisdiction is consistent with due process where "the defendant's suit-related conduct . . . creates[s] a substantial connection with the forum State."[33] The "relationship must arise out of contacts the 'defendant *himself*' creates with the forum state," the " 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[34] The Court reaffirmed *Calder*, holding "these same principles apply when intentional torts are involved."[35]

After *Walden*, a plaintiff's contacts with the defendant and the forum cannot drive the jurisdictional analysis. The "proper question is not where the plaintiff experienced a particular

8

injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[36]

In *Scott v. Lackey*, our Court of Appeals reviewed *Walden* in affirming the grant of summary judgment dismissing one co-defendant for lack of specific personal jurisdiction after trial against the other co-defendant.[37] Our Court of Appeals found private e-mail messages on a message board sent to the out-of-state co-defendant, even though they addressed a Pennsylvania citizen did not meet the *Walden* required connection with Pennsylvania in the absence of evidence the out-of-state co-defendant sent messages himself, made defamatory comments or otherwise directed an intentional tort at the forum.[38]

In *Anzures v. Flagship Restaurant Group*, the Tenth Circuit Court of Appeals recently affirmed the Colorado district court's dismissal for lack of personal jurisdiction over a Nebraska company which owned one-third of a Nevada limited liability company along with a Colorado citizen.[39] Plaintiff alleged the out-of-state defendant breached fiduciary duties and committed fraud knowingly affecting him in Colorado. In distinguishing *Calder*'s effects test and applying *Walden* to the intentional torts, the court of appeals found the out-of-state defendant's actions regarding funding and ownership of a Nevada company, and even the Coloradan's compensation, were not expressly aimed at Colorado because the entity's ties were to Nevada and Nebraska, even though the affected plaintiff-owner lived in Colorado. The court held, "*Walden* reinforces that personal jurisdiction may not rest solely on the fact that a defendant's conduct affected the plaintiff in the forum state."[40]

In *Maxitrate Tratamento Termico E Controles, v. Super Systems, Inc.*, the Sixth Circuit Court of Appeals affirmed the district court's dismissal of a Brazilian insurer for lack of personal jurisdiction based on a lack of evidence the Brazilian defendant did anything purposeful in the

9

Ohio forum state to be liable for breach of contract and bad faith.[41] Following *Walden*, the Court of Appeals found a decision not to defend a case in Ohio, admittedly affecting an Ohio resident and after selling an insurance policy to a company doing business in Ohio, is not purposeful activity under *Walden*.

As we do now, Judge Bloom recently revisited an earlier order to find the court lacked specific personal jurisdiction over a non-resident defendant in an intentional tort case under *Walden*. In *Waite v. AII Acquisition Corp.*,[42] the court found a Florida resident could not sue Union Carbide for asbestos injuries in Florida when his injuries began when he came into contact with asbestos in Massachusetts many years earlier. The Floridian argued Union Carbide registered to do business in Florida, sold massive quantities of asbestos fiber to distributors in Florida and has been a both a plaintiff and defendant in Florida lawsuits. Judge Bloom, after extensive analysis and absent clear precedent from her governing court of appeals, held the plaintiffs' decision to move to Florida may proximately cause their failure to be warned in Florida but "does not tie Union Carbide's conduct to the Florida cause of action 'in any meaningful way.'"[43]

Judge Arleo in this Circuit also recently distinguished between two non-resident defendants in an intentional tort case applying *Walden*. In *Display Works, LLC v. Bartley*,[44] the court did not exercise specific personal jurisdiction over a defendant solely because he solicited customers with some presence in New Jersey and who attended trade shows in New Jersey when there is no evidence the defendant himself entered New Jersey. Another defendant, like Shanks here, maintained frequent contact with New Jersey including regular teleconferences held in New Jersey, interactions with New Jersey employees and assisting the New Jersey company on

business strategies. With this well-reasoned distinction, Judge Arleo found she could exercise specific personal jurisdiction over the second defendant.

> C. **Glover's contacts with Pennsylvania are not sufficient to establish the minimum contacts needed for specific personal jurisdiction.**

Under *Walden*, we focus our inquiry on Glover's contacts with Pennsylvania, mindful our conclusion cannot rest on Sugartown's location in Pennsylvania. We inquire in the context of Sugartown's intentional tort claims against Glover: violations of PUFTA, breach of fiduciary duty and intentional interference with contractual relations.

Glover testified he owned fifty percent (50%) owner of HFI[45], Outlook Hong Kong and Outlook Singapore; he knew HFI entered into a licensing agreement with Sugartown; and, he authorized Shanks to sign the Guaranty on behalf of Outlook Hong Kong.[46] The licensing agreement between HFI and Sugartown, signed by Shanks on behalf of Outlook Hong Kong, contained a choice of law and forum provision, and the parties consented to jurisdiction in Pennsylvania.[47] The Guaranty signed by Shanks on behalf of Outlook Hong Kong consents to jurisdiction in Pennsylvania.[48]

No action by Outlook Hong Kong or Outlook Singapore could be taken without the consent of both Shanks and Glover, and both signed Board of Directors Meeting Minutes eight days after forming Outlook Singapore and closed Outlook Hong Kong's representative office in Indonesia, sold its assets to Outlook Singapore and agreed to transfer Outlook Hong Kong's employees, accrued benefits and liabilities of the employees, to Outlook Singapore.[49] Board Minutes reflect the same type of transaction for Outlook Hong Kong's representative offices in the Philippines and Vietnam.[50] In Asia, Glover signed a Stock Purchase Agreement between Outlook Hong Kong and Outlook Singapore[51] as President of Outlook Singapore and signed agreements selling branch office assets from Outlook Hong Kong to Outlook Singapore.[52]

11

Glover testified he knew in July to August 2012 HFI owed Sugartown millions of dollars under their agreement, he knew Sugartown made a demand for payment on the Guaranty, and took no action to have Outlook Hong Kong make payment on the Guaranty.[53]

Sugartown argues Shanks and Glover took actions to avoid Outlook Hong Kong's obligations on the Guaranty, but there is no evidence Glover created any contacts with Pennsylvania. Glover testified he did not negotiate the licensing agreement with Lilly Pulitzer; he had no communications with Lilly Pulitzer in person, by phone or by email; remained in China at the time of HFI entered into the licensing agreement; and was not involved in assembling financial information for Outlook Hong Kong's Guaranty.[54] There is no dispute Glover has not been in Pennsylvania, or spoke to anyone in Pennsylvania regarding these claims other than in connection with this trial.

We fail to see evidence in the fully developed record Glover himself created contacts with Pennsylvania. The fact his conduct, as the jury found him liable, affected Sugartown in Pennsylvania is not sufficient for specific jurisdiction. His actions occurred in Asia. They involved transactions between a Hong Kong company and Singapore company. Sugartown argues Glover's conduct is akin to the conduct of the defendants in *Calder* rather than the defendant in *Walden*. We disagree, finding *Calder* distinguishable on the facts here. In *Walden*, the Court explained the "crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff" and the "strength of that connection was largely a function of the nature of the libel tort."[55] Defendants' phone calls into the forum to speak to "sources" for their article; the story's focus on the plaintiff's activities in the forum; the article's circulation within the forum causing reputational harm to the plaintiff in the forum were found sufficient contacts to exercise jurisdiction.

We see no such connection between Glover and Pennsylvania here. Glover has resided in Asia since 1989. His only contact with Pennsylvania is travelling here for this case. He never signed any agreement with Sugartown personally and did not authorize anyone else to sign for him. He never communicated with Sugartown regarding the obligations in this case. Unlike Shanks, he focused exclusively on operations and production and did not visit Pennsylvania. There is no evidence he had any role in Sugartown's business, or in the affairs of any Pennsylvania citizen.

Sugartown's argument Glover intended to cause harm to Sugartown in Pennsylvania does not, after *Walden*, create jurisdiction here. While jurisdiction may be appropriate on an alter ego theory, absent an evidentiary basis to find Glover is an alter ego of a defendant over whom we have jurisdiction, we cannot extend due process under *Walden* to include a Chinese business owner who has no activity directed to this forum in Pennsylvania. To do so would improperly attribute Sugartown's address in Pennsylvania to Glover and "mak[e] those connections 'decisive' in the jurisdictional analysis."

### III.    Conclusion

Upon consideration of the trial record and the Supreme Court's 2014 analysis of specific personal jurisdiction, and after finding no evidentiary basis at trial for Glover's alter ego liability as confirmed in our January 8, 2016 Judgment Order, we enter the accompanying Order dismissing Glover because we lack specific personal jurisdiction over him.[56]

---

[1] In *Sugartown Worldwide, LLC v. HFI Brands, Inc. et al*, C.A. No. 12-6685, Judge Padova entered default judgment in favor of Sugartown and against Outlook Hong Kong. (ECF Doc. No. 12). On February 11, 2016, the Clerk of Court reassigned this first filed matter to us. (ECF Doc. No. 18).

[2] Sugartown named Shanks and Glover as defendants (ECF Doc. No. 1). Sugartown's five-count complaint alleged claims for "piercing the corporate veil" (Count I); fraud and common law conspiracy (Count II); unjust enrichment and imposition of constructive trust (Count III); violation of the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA") (Count IV); and breach of fiduciary duty (Count V).

[3] ECF Doc. No. 57-1.

[4] *Id.*

[5] 465 U.S. 783 (1984).

[6] ECF Doc. Nos. 21 and 22.

[7] Although we found personal jurisdiction over the piercing the corporate veil claim, we dismissed it without prejudice for failure to state a claim against Glover under Rule 12(b)(6).

[8] 155 F.3d 254, 265 (3d Cir. 1998).

[9] Sugartown alleged an "action to enforce judgment" against Shanks and Glover (Count I); "successor liability/de facto merger" against Outlook Hong Kong and Outlook Singapore (Count II); unjust enrichment and imposition of constructive trust against Shanks, Glover, and Outlook Singapore (Count III); violation of PUFTA against all Defendants (Count IV); breach of fiduciary duty against all Defendants (Count V); and intentional interference with contractual relations against Shanks, Glover, and Outlook Singapore (Count VI). *See* ECF Doc. No. 52.

[10] Glover's Motion to Dismiss (ECF Doc. No. 57).

[11] ECF Doc. Nos. 81 and 82.

[12] *See* Sept. 14, 2015 Memorandum at 4-5 (ECF Doc. No. 81).

[13] Glover's Proposed Jury Verdict Slip (ECF Doc. No. 133).

[14] On December 8, 2015, we granted Sugartown's motion for summary judgment seeking to impose successor liability against Outlook Singapore and thus finding it liable on Outlook Hong Kong's $5.9 million judgment.

[15] ECF Doc. No. 174. Sugartown withdrew its separate claim for constructive trust before we entered judgment, seeking constructive trust as a remedy for its other claims. *See* Jan. 8, 2016 Trial Transcript ("T.T.") at 150.

[16] Our January 8, 2016 Order also amended our December 23, 2015 Order (ECF Doc. No. 159) to place a constructive trust on Shanks' and Glover's ownership interests in Outlook Singapore and upon its assets until Judgment is satisfied and directing Outlook Singapore to provide

monthly accountings to Sugartown until further Order. Today's Order removes a constructive trust on Glover's ownership interests.

[17] Fed.R.Civ.P. 60(b)(4).

[18] *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008).

[19] *On Track Transp., Inc. v. Lakeside Warehouse & Trucking, Inc.*, 245 F.R.D. 213, 215-16 (E.D. Pa. 2007) (citations omitted) (emphasis in original). *See also Arpaio v. Dupre*, 527 F.App'x 108, 111 (3d Cir. 2013) (under Rule 60(b)(4) a court may vacate default judgment for lack of personal jurisdiction); *Myers v. Moore*, No. 12-597, 2014 WL 7271348, at *3 (E.D. Pa. Dec. 22, 2014) (vacating default judgment under Rule 60(b)(4) as void for lack of personal jurisdiction resulting from improper service, citing *Budget Blinds, Inc. v. White,* 536 F.3d 244, 258 (3d Cir.2008)).

[20] 134 S.Ct. 115, 188 L.Ed.2d 12 (2014). Glover raises *Walden* for the first time in this post-trial motion. Given the Supreme Court's most recent guidance on specific jurisdiction, we have reviewed *Walden*'s effect on Glover's arguments.

[21] *See* Glover's brief at 5 (ECF Doc. No. 180-1) (emphasis in original).

[22] *Id.* (emphasis in original).

[23] ECF Doc. No. 81.

[24] *Id.* at 5.

[25] Civil Judgment at ¶1 (ECF Doc. No. 174).

[26] *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citations omitted); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted).

[27] *O'Connor*, 496 F.3d at 317, n.2.

[28] *IMO Indus., Inc.*, 155 F.3d at 265-66.

[29] *Wolstenholme v. Bartels*, 511 F.App'x 215, 219 (3d Cir. 2013) (quoting *IMO Indus., Inc.*, 155 F.3d at 265); *see also Marks v. Alfa Group*, 369 F.App'x 368, 370 (3d Cir. 2010) ("We have consistently emphasized that *Calder* should be applied narrowly").

[30] *Wolstenholme* at 219 (quoting *Marten*, 499 F.3d at 297).

[31] *Id.*

[32] *Walden,* 134 S.Ct. at 1121 (internal quotation and citation omitted).

³³ *Id.*

³⁴ *Id.* at 1122 (emphasis in original).

³⁵ *Id.* at 1123.

³⁶ *Id.* at 1125.

³⁷ 587 F.App'x 712 (3d Cir. 2014). Several months earlier, our Court of Appeals did not address *Walden* in affirming the district court's dismissal for lack of personal jurisdiction over an out-of-state magazine editor who was neither an officer nor director of the publisher and did not take any actions in an individual capacity to warrant jurisdiction. *Cerciello v. Canale*, 563 F.App'x 924 (3d Cir. 2014). The editor lacked corporate control. Even though Glover served as a corporate officer of Outlook Hong Kong and Outlook Singapore, there is no evidence he negotiated with Sugartown or exercised any corporate control relating to Sugartown.

³⁸ *Id.* at 716.

³⁹ No. 15-1332, 2016 WL 1612789 (10th Cir. Apr. 22, 2016).

⁴⁰ *Id.* at *4 (citing *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state."))

⁴¹ 617 Fed. Appx. 406, 408-09 (6th Cir. 2015).

⁴² No. 15-62359, 2016 WL 2346743 (S.D.Fl. May 4, 2016).

⁴³ *Id. at* *5 (citing *Walden*, 134 S.Ct. at 1125).

⁴⁴ No. 16-583, 2016 WL 164451 (D.N.J. Apr. 25, 2016).

⁴⁵ HFI is incorporated in North Carolina. Jan. 5, 2016 T.T. at 52.

⁴⁶ Jan.6, 2016 T.T. at 229; 243-44.

⁴⁷ Record at 715a, 718a (ECF Doc. No. 93-13).

⁴⁸ Record at 744a (ECF Doc. No. 93-14).

⁴⁹ Jan. 5, 2016 T.T. at 174-180.

⁵⁰ *Id.*at 179-181.

⁵¹ Record at 750a-754a (ECF Doc. No. 93-14).

[52] Record at 755a-791a (ECF Doc. Nos. 93-14, 93-15); *see also* Jan.5, 2016 T.T. at 182-192.

[53] Jan.6, 2016 T.T. at 255-266.

[54] Jan. 7, 2016 T.T. at 13-14.

[55] *Walden*, 134 S.Ct. at 1123-24.

[56] The remaining defendants did not argue we lack personal jurisdiction and given their direct contact with Pennsylvania, including Shanks' personal visit to Sugartown, we would face a much different analysis under *Walden.*